IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| ROBERT CHORAK, | ) | CASE NO.5:18-CV-02243 |
|---|---|---|
| Plaintiff, | ) ) ) ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) | |

I.

Before me[1] is an action under 42 U.S.C. § 405(g) by Robert Chorak seeking judicial review of a 2017 decision by the Commissioner of Social Security that denied his application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my procedural orders[5] the

---

[1] ECF No. 19. The parties have consented to my exercise of jurisdiction.
[2] ECF No. 1.
[3] ECF No. 8.
[4] ECF No. 9.
[5] ECF Nos. 6, 10.

1

parties have briefed their positions[6] and submitted supporting material.[7] The parties have participated in a telephonic oral argument.[8]

For the reasons set forth below, the decision of the Commissioner will be reversed and the matter remanded for further proceedings.

## II.

The facts in this matter are somewhat complex. I note first that this claim (Chorak 3) is connected to a prior proceeding arising from a 2012 application for disability insurance benefits (Chorak 2) that resulted in a 2106 decision by United States District Judge Lioi that reversed the Commissioner's decision to deny benefits and remanded the matter for further proceedings.[9] I further note that although not formally connected to this application or to the 2012 application, the record shows that Chorak had an earlier application for disability benefits (Chorak 1) filed in 2009, which was denied.[10]

For present purposes, while the Chorak 2 application was just beginning the judicial review process, Chorak, in September 2015, filed a new application – *i.e.*, this one (Chorak 3) - for disability insurance benefits.[11] This current application was then consolidated with

---

[6] ECF Nos. 14 (Chorak), 17 (Commissioner).
[7] ECF Nos. 14, Ex. 1 (Chorak), 17, Ex. 1 (Commissioner).
[8] ECF No. 21.
[9] Tr. at 743.
[10] *Id.* at 767
[11] *Id.* at 890-96.

the remanded initial application (Chorak 2) and the entire matter was considered by an ALJ in 2017.[12]

The ALJ at that 2017 hearing, who was the same ALJ as at the 2014 hearing (Chorak 2), initially found that because of new medical evidence adduced since another ALJ's 2009 decision in Chorak 1, as well as new evidence of "claimant's recovery from his mental disorders" during that time, it "would not be appropriate to be bound, in their entirety," by the findings of the ALJ in Chorak 1.[13]

The ALJ in the present matter initially found that new evidence required new findings at various steps of the sequential evaluation process:

- At Step One this ALJ found that Chorak was last insured on March 31, 2017, which is later than had previously been found.[14]
- At Step Two Chorak was found to have engaged in substantial gainful employment during the periods January through December 2012, and from March 24, 2016 to December 31, 2016.[15] Again, the ALJ acknowledged that this time is greater than what was previously found.[16]

---

[12] *Id.* at 662-69.
[13] *Id.* at 598.
[14] *Id.* at 601.
[15] *Id.*
[16] *Id.*

- At Step Three, this ALJ found that there was a continuous 12-month period when Chorak did not engage in substantial gainful employment – *i.e.*, from December 2012 to March 24, 2016.[17] This was also new finding in this decision.

- At Step Four, Chorak was found to have severe impairments of obesity, asthma, and degenerative disc disease of the thoracic spine without myelopathy and with myofascial pain. The ALJ noted that this Step Four finding was made to account for "impairments identified in the present record as well as to remove those no longer demonstrated to be severe."[18]

- After concluding that these severe impairments did not meet or equal a listing,[19] the ALJ determined that Chorak's RFC was for light work, but with some additional capabilities and limitations.[20] Once again, this RFC differed from the prior RFC. This is because this ALJ concluded that Chorak's mental condition was "non-severe" and "imposed no limitations appurtenant to their existence."[21] The ALJ further noted that Chorak's asthma appeared to be controlled[22] and that pain from his back problems was "not as severe as alleged."[23] In that regard, the ALJ made a point to note that although Chorak may not have intended to give

---

[17] *Id.*
[18] *Id.*
[19] *Id.* at 603.
[20] *Id.* at 604.
[21] *Id.*
[22] *Id.* at 605.
[23] *Id.* at 606-07.

4

misleading testimony, his testimony as to certain details differed from other facts in the record.[24]

- The ALJ then analyzed and gave little weight to functional opinions of: (a) Chorak's treating physician,[25] (b) two state consultative physicians – one examining and one records review,[26] (c) a chiropractor[27] and (d) a nurse practitioner.[28] The ALJ however gave considerable weight to the functional opinion of state consultative psychological examiner.[29] He also gave considerable weight to the opinion of non-examining state agency physician.[30]

- The ALJ concluded at Step Five that Chorak was capable of performing his past relevant work as an insurance agent and so was not disabled.[31] This once more was a different finding then the prior Step Five conclusion.[32]

Chorak essentially contests the changed findings of the ALJ at Steps One,[33] Two[34] and Four.[35] In brief, he maintains that:

---

[24] *Id*. at 608.
[25] *Id*. at 608-09.
[26] *Id*. at 610-11.
[27] *Id*. at 611.
[28] *Id*.
[29] *Id*. at 610.
[30] *Id*.
[31] *Id*. at 611-12.
[32] *Id*. at 612-13.
[33] ECF No. 14 at 18-24.
[34] *Id*. at 24-27.
[35] *Id*. at 27-34.

5

- at Step One the ALJ erred by finding that self-employment earnings in 2012 and 2016 constituted substantial gainful activity;[36]

- at Step Two the ALJ erred by failing to classify Chorak's mental impairments as severe;[37] and,

- at Step Four the ALJ incorrectly fashioned the RFC without including limitations related to severe mental impairments and improperly gave lesser weight to the functional opinions of treating sources over opinions from consulting physicians.[38]

The Commissioner, in turn, argues that the ALJ correctly determined Chorak's income for both 2012 and 2014, that he reasonably concluded that the mental impairments were not severe and that any claim of a Step Four err was waived.[39]

III.

In note initially that Chorak's claims here are considered under the well-established substantial evidence standard.

*Step One*

Before proceeding further, I note that an additional aspect to the Step One argument was raised during oral argument. Specifically, that discussion concerned, in part, a claim –

---

[36] *Id*. at 18-24.
[37] *Id*. at 24-27.
[38] *Id*. at 27-34.
[39] ECF No. 17 at 3-26.

6

never briefed – that the ALJ erred as to finding substantial gainful activity for the years 2012 and 2016 because the ALJ examined those years without a mandate to do so in the remand and/or any notice to the parties that such re-examination would occur.

In that regard, it is important to keep in mind, as I have previously found, that Social Security claimants are entitled to due process at the hearing level because they have a property interest in any potential benefit.[40] Due process, in turn, has been characterized by the Supreme Court as the opportunity to be heard at a meaningful time and in a meaningful manner.[41]

That said, an ALJ on remand is not limited to only addressing issues discussed by the district court and specifically given as the basis for the remand.[42] While the re-hearing must faithfully consider obey the remand mandate in all its specifics, where a matter was not addressed by the district court an ALJ on remand is free to "reconsider any evidence deemed appropriate in reaching a decision regarding a claim."[43]

The key here is that any such reconsideration be in a manner that affords due process.

The Sixth Circuit recently considered due process as it concerned claims for Social Security benefits in the case of *Hicks v. Commissioner of Social Security*.[44] Hicks was a

---

[40] *Sito v. Commissioner*, 229 F.Supp.3d 633, 643 (N.D. Ohio 2017) (citation omitted).
[41] *Id*. (citation omitted).
[42] *Sito v. Berryhill*, 2018 WL 4566020, at * 15 (N.D. Ohio June 28, 2018) (citations omitted).
[43] *Id*. (internal citation omitted).
[44] 909 F.3d 786 (6th Cir. 2018) (rehearing *en banc* denied March 29, 2019).

claimant for benefits that originally received them.[45] But after some years it was discovered that the claimant's attorney had been submitting fraudulent evidence to the Commissioner and had been bribing an ALJ to ignore evidence of fraud and to award benefits.[46]

In light of the indication of fraud by counsel, the Commissioner decided to redetermine if benefits should be awarded.[47] To deal with the fraud issue, the Commissioner concluded that the redetermination process should totally disregard all medical evidence previously submitted by doctors implicated in the fraud.[48] Critically, Hicks was not told of that decision and so was not afforded an opportunity to rebut the assumption of fraud. She was denied benefits as various pieces of medical evidence were excluded.[49]

Hicks's claim on appeal was that due process in her case required, at a minimum, that she have been given a fair opportunity to rebut the Commissioner's fact assumption – that the original medical submissions were tainted by fraud - before a neutral decisionmaker.[50] The Sixth Circuit agreed, finding that "[a]s the government's action in this case (denying benefits on redetermination)'depends on fact findings' (the original

---

[45] *Id.* at 791.
[46] *Id.* at 792.
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.* at 797.

8

medical submissions are tainted by fraud) that the plaintiffs have not been provided the opportunity to rebut, the government's process is constitutionally inadequate."[51]

In this case the ALJ at the 2017 hearing after the remand specifically discussed Chorak's work history for 2016. In particular, the ALJ brought up on the record that Chorak had received an insurance license with Mutual of Omaha in March 2016.[52] Chorak testified that, with another company, he had sold "a few policies" doing "part time work" during 2016 that produced "close to $10,000."[53] The ALJ then directed Chorak's counsel to "talk to your client" and then submit "the 2016 tax records."[54]

This record shows conclusively that the ALJ brought up at the 2017 the issue of whether Chorak had substantial gainful activity (SGA) during 2016. Further, in that regard the ALJ invited Chorak's counsel to submit tax information for 2016 for the record. Given this on the record discussion and the fact that Chorak's counsel made no objection, counsel cannot here claim a due process violation occurred when the ALJ, without notice or a chance to respond, undertook to examine whether Chorak had substantial gainful activity for 2016. Indeed, as I noted in an earlier decision, "[i]t is again difficult to find a reversible due process violation in actions taken with full knowledge of counsel but without objection."[55]

---

[51] *Id*. at 797-98 (citation omitted).
[52] Tr. at 632.
[53] *Id*. at 640.
[54] *Id*.
[55] *Sito*, 229 F.Supp.3d at 644.

9

The same reasoning does not exactly apply for the year 2012. For that year, both parties now agree that no new evidence came into the record. Thus, there is no evidence in the 2017 hearing transcript that the ALJ had any intention of re-examining the SGA finding for 2012. Still, the *Hicks* template provides the analytical way forward as to 2012. Most importantly, *Hicks* focuses on the need for due process to rebut "fact findings" or assumptions that, if not contested, could be the basis for a denial of benefits. For the year 2012, as noted, no new facts came into the record. Rather, the ALJ in 2017 re-determined 2012 SGA from existing facts. As such, Chorak's remedy is not to assert that he was denied a chance to challenge before the ALJ any erroneous factual assumption by the Commissioner but is precisely the one he is now employing – to seek judicial review of the 2012 SGA re-determination by this Court on the grounds that it was not supported by substantial evidence understood in light of the correct legal standard.

In sum, I find no due process violations in how the ALJ considered Chorak's SGA for 2012 and 2016.

Having addressed the process argument as to Step One, I now consider the substantive claim that the ALJ erroneously determined that Chorak's income in 2012 and 2016 constituted substantial gainful activity.

*2012*

The ALJ in his 2014 decision prior to the remand dealt with Chorak's income during 2011 and 2012 by simply finding that while the record showed that Chorak had income for

this period that "approached SCA levels," there were few specifics related to that activity.[56] Thus, while it was "arguable" that Chorak had SGA during this period, the ALJ decided to "give the claimant the benefit of the doubt" and find that the work in this period did not qualify as SGA.[57]

By contrast, in the 2017 decision the ALJ found that Chorak had SGA during 2012 because he earned $11, 261.00 "from a brief period of work writing an annuity policy."[58] The explanation given as to why this income producing activity qualified as SGA in 2017, but not in 2014, was a brief statement that the 2017 finding reflected "work activity indicated in the present evidence" – *i.e.*, the testimony of Chorak at the hearing.[59]

The specific evidence that Chorak had written the annuity policies in 2012 was, in fact, new testimony from the 2017 hearing. The ALJ in 2014 explicitly made note in the opinion of the fact that "[Chorak] testified that he did some work *in 2011 and 2012* writing annuities for a few clients."[60] Yet, the ALJ further noted, Chorak in 2014 was unable to "recall the exact dates, the amount of time, or other specifics regarding [the annuities written in 2011 and 2012]."[61]

Thus, when Chorak clarified at the 2017 hearing that the income from writing annuities was actually generated during a "brief period of work" in 2012, the ALJ was able

---

[56] *Id*. at 17.
[57] *Id.* at 601.
[58] *Id*.
[59] *Id*.
[60] *Id*. at 17 (emphasis added).
[61] *Id*.

11

to remove any prior uncertainty as to the exact time period involved and then properly place the annuity income in the year 2012.

As such, that is a substantial change in the factual basis for calculating SGA from the 2014 opinion. Yet this fact change was done through testimony given on the record by Chorak with his attorney present. Thus, no due process violation occurred.

The finding that Chorak's income during 2012 constituted SGA depends on the application of SSR 83-34. In that regard, I observe initially that the ALJ did not reference this standard in his opinion nor did he undertake to "show his work" as to how that standard applied to Chorak.

The mere amount of gross income is not determinative of substantial income as defined by the regulations. As the Court found in stated in *Young v. Colvin*,[62] after it is determined that a claimant has provided significant services to a self-employment business, the ALJ must then determine if the claimant received "substantial income."[63] As is the normal accounting practice, normal business expenses must be deducted from gross income to determine net income.[64] Once net income is determined, the ALJ then must further subtract any benefit from unpaid help or similar deductions.[65] The remaining total is a claimant's "countable income."[66]

---

[62] 2013 WL 4591574 (E.D. Tenn. Aug. 28, 2013).
[63] *Id*. at * 6.
[64] *Id*.
[65] *Id*.
[66] *Id*.

Only then is that annual countable income analyzed to see if it is "substantial." Substantial income at that step is found by determining: (a) if the average monthly amount from the yearly countable income is greater than the monthly amount set out in the regulations, or (b) if the monthly average is less than the amount given in the regulation, is the actual monthly average nonetheless comparable to what it was prior to the onset of the claimant's disability or comparable to the monthly average of unimpaired persons in the same community doing the same or similar work.[67]

As the above analytical formula makes plain, "[f]or self-employed individuals, [gross] income is not a dispositive factor…."[68] Where there is no explicit determination of "substantial income" according to the guidelines set forth above, there is no substantial evidence to conclude that there was SGA for the relevant period.[69]

In particular, as Chorak points out, the monthly average of his countable income for 2016 was $972.91, which is below the guideline figure of $1130.00 per month, and the monthly average for countable income in 2012 was $907.91, or below the guideline figure of $1010.00.[70] Yet, there is no acknowledgment of these figures by the ALJ, nor is there any alternative calculation. Further, if Chorak's figures are correct, then the ALJ should have gone on to determine, as noted above, if Chorak's monthly averages in 2012 and 2016

---

[67] *Id.*
[68] *Id.*
[69] *Id.* (citations omitted).
[70] ECF No. 14 at 20-21.

13

were comparable to what those averages were in the period before he claimed disability or if they were comparable to unimpaired persons doing the same work.

The absence of any such analytical findings by the ALJ compel the conclusion that the Step One findings are not supported by substantial evidence.

*Steps Two and Four*

These arguments center on the weight given to various medical opinions and the resulting formulation of the RFC. Essentially, this matter centers on the fact that the ALJ gave only little weight to functional opinions by treating physician Dr. Christopher Stetler, D.O.[71] and basically dismissed without the assignment of weight the functional opinion of treating physician Dr. Vernon Lin, M.D.[72] but then gave considerable weight to the opinion of state reviewing consultant Dr. Gary Hinzman, M.D.[73]

I begin by observing that this matter was previously remanded, in substantial part, because the ALJ failed to articulate good reasons for discounting Dr. Stetler's opinion.[74] In the present case, as related by the Commissioner, the ALJ gave three reasons why Dr. Stetler's opinion was inconsistent with objective evidence and other medical findings:

1. physical examination findings, including those of Dr. Stetler, consistently showed "preserved strength, reflexes, coordination, sensation and gait;"[75]

---

[71] Tr. at 608.
[72] *Id*. at 609.
[73] *Id*. at 610.
[74] *Id*. at 775.
[75] *Id*. at 608.

14

      2.      diagnostic imaging showed only age-commensurate degenerative changes in the spine that did not require surgery;[76]

      3.      Chorak's daily activities show that he can continue to work, maintain his house and have part-time custody of a minor child.[77]

My analysis here begins by noting the March 2016 findings of Dr. Lin of the Cleveland Clinic, who examined an MRI of Chorak's back and gave a provisional diagnosis of "mechanical back pain, degenerative disc disease and disk protrusion."[78] Dr. Lin a few months later referred Chroak's case to Dr. Jason Savage, M.D., another Cleveland Clinic physician, for a second opinion.[79] Dr. Savage characterized that MRI of the thoracic spine as showing "mild degenerative changes, no evidence of significant neurologic compression."[80] He concluded that Chorak was not a candidate for surgery but rather that he "has signs/symptoms of chronic pain syndrome."[81]

Dr. Savage's diagnosis of chronic pain syndrome as an examining consulting physician was neither acknowledged or discussed by the ALJ.[82] And yet there is case authority for recognizing chronic pain syndrome as a distinct impairment. The district court

---

[76] *Id*.
[77] *Id*.
[78] *Id*. at 1184.
[79] *Id*. at 1283.
[80] *Id*. at 1286.
[81] *Id*.
[82] The ALJ, however, does reference, without more, the MRI of September 2016 and its finding of only mild degenerative changes. *Id*. at 606.

in *Myers v. Colvin*[83] examined some of the background of this condition before concluding that chronic pain syndrome is a condition where pain from mental and physical sources merge and the individual components "are not neatly separable."[84] Failure to list chronic pain syndrome as a severe impairment is harmless error only when the RFC includes limitations attributable to chronic pain.[85]

I also observe that the functional opinion given the greatest weight here is that of a non-examining source that only reviewed records through January 2013. Non-examining sources may be given greater weight than examining sources in cases where the non-examining source has reviewed the complete record.[86] In cases, such as here, where the non-examining source has not reviewed the complete record the ALJ must acknowledge that fact on the record and provide a sufficient explanation as to why greater weight was given to a non-examining source that did not review the complete record.[87] Failure to do so results in a finding that the determination of weight was not supported by substantial evidence.[88]

Here, the decision to give greater weight to the non-examining source that did not review the entire record was not explained and so must be reversed as not supported by substantial evidence. In addition, the presence of an unacknowledged and unanalyzed

---

[83] 954 F. Supp.2d 1163 (W.D. Wash. 2013).
[84] *Id*. at 1173.
[85] *Williams v. Berryhill*, 2018 WL 4501062, at *3 (W.D. N.Y. Sept. 20, 2018) (citing *Myers*).
[86] *Miller v. Commissioner*, 811 F.3d 825, 834 (6th Cir. 2016).
[87] *Id*.
[88] *Id*.

diagnosis by the most recent expert to consider the medical evidence makes it difficult to conclude that the RFC is supported by substantial evidence. If credited, a diagnosis of chronic pain syndrome synthesizes reports of largely normal physical findings regarding Chorak's back with ongoing reports of disabling pain, and does so without having to characterize the pain as a "misrepresentation" that doesn't "correlate with the objective findings."[89] I emphasize that this observation is not to prejudge any findings after the matter is considered on re-hearing but only to state that, at present, the analysis of the opinion is not supported by substantial evidence that deals with a diagnosis of chronic pain syndrome.

IV.

Therefore, for the reasons stated, the decision of the Commissioner in this case is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: December 30, 2019            s/William H. Baughman Jr.
                                    United States Magistrate Judge

---

[89] Tr. at 608.